UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

ZAYER A. ADAMS,

     Plaintiff,

v.

M. GARRETT, *et al.*,

     Defendants.

No. 5:23-CV-164-REW

MEMORANDUM OPINION
AND ORDER

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Zayer A. Adams is currently confined at the Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky.  Proceeding without an attorney, Adams previously filed a Complaint against Defendants University of Kentucky ("UK") Health Care, four individual physicians employed by UK (Dr. Evan B. Lynch, Dr. Morgan S. Brgoch, Dr. Paul J. Spicer, and Dr. Garrett), and UK medical student Narayan Raghava, based upon allegations of medical negligence related to the treatment of his hand in July 2022 and October 2022.  DE 1 (Original Complaint).[1]

However, because diversity of citizenship did not exist between Adams and the Defendants because Adams's Complaint did not allege a claim against the Defendants arising under federal law, it did not appear from the face of Adams's Complaint that this Court had grounds to exercise jurisdiction.  *See* 28 U.S.C. §§ 1331, 1332.  Because this Court has an independent obligation to consider whether subject-matter jurisdiction exists, *see Answers in Genesis of Ky., Inc. v. Creation*

---

[1] Adams originally filed his complaint in the United States District Court for the Western District of Kentucky.  However, after that Court determined that proper venue lies in the Eastern District of Kentucky, the case was transferred here.  *See* DE 16 (Transfer Order).

*Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009), the Court entered a Show Cause Order directing Adams to show cause, in writing, why this case should not be dismissed for lack of jurisdiction. *See* DE 22 (Show Cause Order).

In response to the Court's Order, Adams filed a Motion for Leave to File an Amended Complaint (DE 25) and tendered a proposed Amended Complaint (DE 25-1). Adams's Amended Complaint alleges that the Defendants violated his rights under the Eighth Amendment, thus invoking this Court's "federal question" jurisdiction granted by 28 U.S.C. § 1331. The Federal Rules of Civil Procedure provide that a plaintiff is entitled to amend his pleading once as a matter of right if done within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1)(B); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). Because the Defendants have not yet been served with process, Adams is entitled to amend his Complaint as a matter of right. Thus, the Court grants his Motion for Leave to File an Amended Complaint, which the Clerk of Court will file into the record. "An amended complaint supersedes an earlier complaint for all purposes." *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013). Thus, Adams's Amended Complaint supersedes (or replaces) his original Complaint and is now the operative pleading in this action.

## I.

Because Adams is a prisoner seeking redress from officers and/or employees of a governmental entity, Adams's Amended Complaint is subject to preliminary review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. Upon initial screening, the Court must dismiss any claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See McGore v. Wrigglesworth*,

114 F.3d 601, 607–08 (6th Cir. 1997).  At this stage, the Court accepts Adams's factual allegations as true.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

A civil complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 1974; *see also* Fed. R. Civ. P. 8.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (quotation marks and citation omitted).  Conclusory allegations that the Defendants violated Adams's rights, devoid of factual support, are insufficient to state a claim for relief.  *See Twombly*, 127 S. Ct. at 1964–65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."); *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).

## II.

By way of background, Adams's original Complaint alleges that he was seen at UK Health Care on July 5, and 6, 2022, and again on October 7, 2022, for surgery and follow-up treatment for his hand.  According to Adams:

> During the surgery Doctor Evan B. Lynch failed to take out a spring that's in my right hand along with a piece of glass we agreed on to have taken out.  The Doctor failed to take out the spring in my right hand leaving it with scar tissue.  He told me that I would be coming back for a second visit to take out the spring in my hand. Instead of that happening, I was transferred to [the Western Kentucky Correctional Complex ("WKCC") in Fredonia, Kentucky] with my hand swollen in worse shape than it was before surgery leaving me unable to bend my fingers with a piece of glass still in my hand.  This is malpractice on the behalf of the Doctor leaving me in worse shape than before surgery.  This is also negligence against causing me more harm than before surgery, leaving me unable to use my hand. . . . I had an agreement with the Doctor to take the spring out and the glass out.  That didn't happen.  I'm still disabled from using my hand.

*See* DE 1 at 4.

3

Adams then states that he was transferred "here" (referring to the WKCC) on November 4, 2022. *Id*.[2]  According to Adams, he is "very swollen constantly hurting without any after care to tend to my hand no therapy." *Id*. at 5.  He also alleges that he did not receive the Dove body wash that he was supposed to receive to clean his hand. *Id*.  He further claims that he was "issued a knock off to be moved where [he] didn't have to climb up the steps," but "[t]he facility never granted that Doctors order," forcing him to climb the steps. *Id*.  He states that he "had to go without [his] proper medication and was given something totally different than what was prescribed to [him]." *Id*.  He alleges that "[b]ecause [he is] an inmate[,] [he] was treated low class," and claims that he "was discriminated against due to [his] race." *Id*.[3]  He then requests that his hand be fixed and that "this institution . . . be held accountable for their actions." *Id*.  According to Adams, he is suffering from pain, emotional distress, and anxiety. *Id*. at 4.  He requests monetary relief in the amount of $2 million. *Id*. at 6.[4]

However, Adams's Amended Complaint does not set forth *any* of these factual allegations regarding the basis for his claims, nor does it otherwise make any references to the facts as alleged in his original Complaint. *See* DE 25-1.  Rather, after specifying that he is suing Dr. Evan B. Lynch, Dr. Morgan S. Brgoch, Dr. Paul J. Spicer, Dr. Garrett, and four unknown medical students

---

[2] According to records submitted by Adams with his Complaint, at the time that Adams received treatment at UK, he was housed at the Eastern Kentucky Correctional Complex ("EKCC") in West Liberty, Kentucky. *See* DE 1-1 at 2.

[3] Despite this stray reference to race discrimination, as the Court noted previously, *see* DE 22 at 5, Adams does not refer to a statutory or other cause of action premised on race.

[4] Although these allegations relate to Adams's conditions of confinement after he was transferred to WKCC, Adams's Complaint does not assert claims against any officials at WKCC.  Rather, the only defendants that he identifies in either his original or Amended Complaint are UK Health Care and its individual medical providers who provided the medical treatment for Adams's hand while he was housed at EKCC.

employed by the University of Kentucky, all in their respective individual and official capacities,

Adams's Amended Complaint alleges as follows:

> The Defendant's was deliberate indifference to the Plaintiff's serious medical need, that their actions resulted in serious medical injury and serious [intentional] infliction of pain to Plaintiff hand that violated the Plaintiff 8th amendment right of federal constitution and constituted cruel and unusual punishment. The Defendants failed to administer proper necessary medical treatment toward Plaintiff hand, and as [a] result the Plaintiff [suffers] serious medical injuries and a [severe substantial] amount of pain that was intentionally inflicted by defendants as a result to their deliberate indifference under the 8th amendment of federal established laws, as a result the plaintiff is no longer able to use his hand in a health manner or his fingers as a normal person would.

*Id*. at 1–2. As relief, he seeks monetary damages in the amount of $2 million and injunctive relief

in the form of an Order directing Defendants to fix his hand. *Id*. at 2.

III.

A.

To properly plead a claim for relief, "[l]egal conclusions that are 'masquerading as factual

allegations' will not suffice." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir.

2011) (quoting *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 276 (6th Cir.2010) (other citations

omitted)). Nor are vague allegations that one or more defendants acted wrongfully or violated a

plaintiff's constitutional rights sufficient to adequately state a claim for relief. *See Laster*, 2008

WL 1901250, at *2. Adams's allegations that the Defendants were "deliberately indifferent" to

his "serious" medical needs; that the Defendants' intentional infliction of pain violated his Eighth

Amendment rights; and/or that the Defendants failed to administer "proper necessary" medical

treatment—with no accompanying factual allegations—are either entirely conclusory or too vague

to properly plead a claim for relief. Because Adams's Amended Complaint fails to allege facts in

support of these legal conclusions, his Amended Complaint fails to adequately allege a viable

Eighth Amendment claim against any of the Defendants, and the Court must dismiss the Amended Complaint for failure to state a claim for relief.

B.

Even if the Court were to liberally construe Adams's Amended Complaint to incorporate the factual allegations set forth in his *original* Complaint in light of Adams's *pro se* status, Adams still fails to adequately allege an Eighth Amendment claim against any of the Defendants in either their official or their individual capacities.

1.  <u>Official Capacity Claims</u>

Constitutional claims—such as Eighth Amendment claims—against state actors are brought pursuant to 42 U.S.C. § 1983, which provides a remedy against any person acting under color of state law for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.[5] An "official capacity" claim against a government official is construed as a claim directly against the governmental agency that employs the official. *Lambert v. Hartman*, 517 F.3d 433, 439–40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent.") (quotation marks and brackets omitted).

Adams's official capacity claims against the individual defendants—which are, in effect, claims against the University of Kentucky—are barred by the Eleventh Amendment to the extent

---

[5] For the sake of this analysis, the Court will assume (without deciding) that Adams sufficiently alleges that Defendants were acting under color of state law, as is required to state a viable § 1983 claim. The conduct of private individuals, even if discriminatory or wrongful, is not actionable under § 1983. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 119 S. Ct. 977, 985 (1999).

6

that those claims seek monetary damages.  *See Rodgers v. Banks,* 344 F.3d 587, 594 (6th Cir.2003).

Moreover, as arms of the state, these defendants are not "persons" subject to liability under Section

1983.  *Will v. Mich. Dep't of State Police,* 109 S. Ct. 2304, 2309 (1989); *see also Hutsell v. Sayre*,

5 F.3d 996, 1002–03 (6th Cir. 1993) (because "a suit against the UK Board of Trustees and its

employees in their official capacity is fairly characterized as a suit against the 'state' for purposes

of Eleventh Amendment immunity," the district court "properly dismissed the claims against UK

and its officials").   Thus, the Court must dismiss Adams's § 1983 claims seeking monetary

damages from the Defendants in their official capacities.

True, Adams also requests injunctive relief in the form of an Order directing Defendants

to "fix his hand."  *See* DE 25-1 at 2.  In *Ex parte Young*, 209 U.S. 123 (1908), the United States

Supreme Court "announced an exception to Eleventh Amendment sovereign immunity . . . for

claims for injunctive relief against individual state officials in their official capacities."  *Diaz v.

Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).  However, "[i]n order to fall within the

*Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of

federal law."  *Id.* (citing *MacDonald v. Vill. of Northport,* 164 F.3d 964, 970–72 (6th Cir.1999)).

"To determine whether the *Ex parte Young* exception applies, we 'need only conduct a

straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective.'"  *T.M., Next Friend of H.C. v. DeWine*, 49

F.4th 1082, 1088 (6th Cir. 2022) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 122 S. Ct.

1753, 1760 (2002)) (alteration in original).   However, "[r]etroactive relief for past unlawful

conduct will not do."  *Id.* (citations omitted).

Here, Adams does not allege that there is an ongoing violation of federal law, nor does he

seek prospective relief.  Rather, Adams claims that, in the past, the Defendants failed to properly

administer medical treatment, this past conduct violated his rights under the Eighth Amendment, and that, as relief, the Defendants should be required to fix his hand.  However, claims based solely upon allegations of past misconduct fall outside the exception found in *Ex parte Young*, 209 U.S. 123 (1908).  *See Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (the *Ex parte Young* exception does not "exist for injunctive relief 'based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to' the plaintiff.") (quoting *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003)); *see also Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (holding that the plaintiffs could not "escape the Eleventh Amendment bar blocking suits for money damages against the states by phrasing their requests for monetary relief as requests for future payments"); *Bailey v. Montgomery*, 433 F. Supp. 2d 806, 810–11 (E.D. Ky. 2006) (rejecting application of *Ex parte Young* where plaintiff "is only complaining of past actions of [state] officials and does not allege present, ongoing conduct that is violative of his federal rights.") (citing *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)).

For all of these reasons, Adams fails to state a claim for which relief may be granted against UK Health Care or any of the individual defendants in their "official" capacities.

### 2.   Individual Capacity Claims

Adams's Eighth Amendment claims against the Defendants in their respective individual capacities fare no better.  Personal liability in an action brought pursuant to 42 U.S.C. § 1983 hinges upon the defendant official's personal involvement in the deprivation of the plaintiff's civil rights.  *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003.  Accordingly, federal notice pleading requires that, at a minimum, the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against him.  *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

Neither Adams's original Complaint nor his Amended Complaint allege that Dr. Brgoch, Dr. Spicer, Dr. Garrett, or any medical students were personally involved in conduct that violated Adams's constitutional rights. Adams does not make *any* specific allegation about the conduct of any of these individuals. Rather, with the exception of Adams's allegations against Dr. Lynch in his original Complaint, Adams's allegations are made against the Defendants as a group, with no particular conduct attributed to any specific individual defendant. However, a "[p]laintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) (citations omitted). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts…and indicate what each defendant did to violate his rights…" *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010)); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Adams's failure to do so in either his original or his Amended Complaint warrants dismissal of his Eighth Amendment claims against Dr. Brgoch, Dr. Spicer, Dr. Garrett, and the unknown medical students.

With respect to Dr. Lynch, as with the other defendants, Adams's Amended Complaint makes no allegations specific to Dr. Lynch. However, Adams's original Complaint alleges that, contrary to their agreement, Dr. Lynch failed to remove a spring and a piece of glass during surgery on Adams's right hand; Adams's hand was left with scar tissue after the surgery; Dr. Lynch told Adams that Adams would be returning for a second visit to remove the spring; and Adams was instead transferred to the WKCC. *See* DE 1 at 4. Adams alleges that Dr. Lynch's malpractice and negligence left him "in worse shape than before surgery" and unable to use his hand. *Id*. However, even if the Court construed Adams's Eighth Amendment claim to include these factual allegations, Adams's allegations are insufficient to state a viable Eighth Amendment claims against Dr. Lynch.

In the medical care context, "[i]n order to state a cognizable claim [under the Eighth Amendment] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 97 S. Ct. 285, 295 (1976). Such a claim involves a two-part inquiry with both an objective and a subjective component: (1) the plaintiff must allege a sufficiently serious medical need, and (2) the plaintiff must allege facts that "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citation and quotation marks omitted).

While Adams's medical needs related to his hand may be sufficiently serious, he must also allege facts showing that Dr. Lynch acted with a knowing and culpable disregard for Adams's well-being to satisfy the subjective component of his Eighth Amendment claim. *See Estelle*, 97 S. Ct. at 291; *Wilson v. Seiter*, 111 S. Ct. 2321, 2323 (1991); *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference is more than negligence and approaches intentional wrongdoing.") (citation and quotation marks omitted). This is because the failure to provide adequate medical care violates the Eighth Amendment "only when the doctor exhibits 'deliberate indifference to a prisoner's serious illness or injury'…that can be characterized as 'obduracy and wantonness' rather than 'inadvertence or error in good faith.'" *Rhinehart v. Scutt*, 894 F. 3d 721, 737 (6th Cir. 2018) (quoting *Estelle*, 97 S. Ct. at 291, and *Wilson*, 111 S. Ct. at 2324). Indeed, "the requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Johnson,* 398 F.3d at 875 (citation, quotation marks, and brackets). Thus, what will not

10

suffice are allegations that the plaintiff's doctors were merely negligent in their diagnosis of the prisoner's medical condition or that the doctors simply failed to provide adequate medical care. *See Rhinehart*, 894 F. 3d at 736.

Here, Adams's factual allegations are that, while Dr. Lynch provided medical treatment for Adams's hand, he did so negligently and, in doing so, committed malpractice. *See* DE 1 at 4. However, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Rather, when a prisoner has been examined and treated, but the prisoner disagrees with the course of care determined by his treating physician in the exercise of his medical judgment, his claim sounds in state tort law—it does not state a viable claim of deliberate indifference under the Eighth Amendment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.") (citations and quotation marks omitted); *Durham v. Nu'Man*, 97 F. 3d 862, 868–69 (6th Cir. 1996).

Thus, while Adams may be dissatisfied with the results of his surgery—and, indeed, while he may argue that the treatment provided fell below the applicable standard of care—these allegations do not suggest the sort of deliberate indifference that is the touchstone of a constitutional claim under the Eighth Amendment. Even if construed broadly to include the facts alleged in his original Complaint, Adams's Amended Complaint fails to state a viable Eight

Amendment claim against Dr. Lynch.  Thus, the Court dismisses Adams's Eighth Amendment claim against Dr. Lynch for failure to state a claim.

Because Adams has failed to adequately allege an Eighth Amendment claim against any of the named defendants, the Court dismisses his Eighth Amendment claims.  And, as these are the only claims alleged in Adams's Amended Complaint, the Court also dismisses the Amended Complaint.

IV.

While the allegations of Adams's original Complaint also suggested an intent to bring claims of negligence, Adams omitted these allegations from his Amended Complaint.  Thus, his intent with respect to any of these claims is unclear.  In any event, while the Court may have had supplemental jurisdiction over state law claims related to Adams's Eighth Amendment claims pursuant to 28 U.S.C. § 1367(c), a district court may "decline to exercise supplemental jurisdiction over a claim [if] the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).

Where, as here, the Court has dismissed all of the plaintiff's federal claims, the Court concludes that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. *Carnegie–Mellon University v. Cohill*, 108 S. Ct. 614, 619 (1988); *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) (noting that "[i]f the court dismisses plaintiff's federal claims pursuant to Rule 12(b)(1), then supplemental jurisdiction can *never* exist", and that "[a]fter a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims.").  For all of these reasons, the Court will dismiss Adams's Amended Complaint without prejudice to Adams's right to bring claims arising under

state law (such as negligence claims) in the appropriate state court or another court having jurisdiction.

Accordingly, the Court **ORDERS** as follows:

1.      Adams's Motion for Leave to File an Amended Complaint (DE 25) is **GRANTED**;

2.      The Clerk of the Court **SHALL FILE** Adams's tendered Amended Complaint (DE 25-1) into the record.  Adams's amended complaint is now the lone operative pleading in this action;

3.      Adams's Amended Complaint (DE 25-1) is **DISMISSED** without prejudice to Adams's right to bring related claims arising under state law in the appropriate state court or other forum with jurisdiction;

4.      A corresponding Judgment will be entered this date; and

5.      This matter is **STRICKEN** from the Court's docket.

This 19th day of March, 2024.

**Signed By:**

*Robert E. Wier*

**United States District Judge**

13